# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JOSEPH AND EUNIDE A. BENJAMIN,

    Plaintiffs,

v.

SHELLPOINT MORTGAGE SERVICING,
and BANK OF NEW YORK MELLON,

    Defendants.

No. 2:17-cv-81

## ORDER

This Matter comes before the Court on the Motion for Summary Judgment of Defendants Bank of New York Mellon ("the Bank") and Shellpoint Mortgage Servicing ("Shellpoint"). Dkt. No. 8. This Motion has been fully briefed and orally argued and is now ripe for review. For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

In order to understand the present lawsuit, it is important to review the Benjamins' previous lawsuits.

### I. The Initial Lawsuit

The record shows that Plaintiffs sued BAC Home Loans Servicing LP ("BAC") in Glynn County Superior Court on April 29, 2011, and that the case was removed to this Court. Dkt. Nos. 8-

4, 8-5. In that suit, Plaintiffs complained of damages suffered as a result of BAC's failure to debit their account, which caused Plaintiffs to default on the trial modification plan. Specifically, they alleged the following:

> Before the parties signed the promissory note, Countrywide told them their interest rate would be between 5% and 6.25%, that as the date of closing approached, their loan officer told them that their interest rate would be higher, around 8%, and that at closing, there were actually two loans, the first with an interest rate of 8 3/8% and the second with an interest rate of 12 3/8%. Dkt. No. 8-4 ¶¶ 7-9. The second loan was in the amount of $50,700. Id. ¶ 17. Unable to make payments, Plaintiffs sought a loan modification but were told they needed to wait two years. Id. ¶ 24. Countrywide contacted Plaintiffs about qualifying for a lower interest rate loan in October, 2007. On November 15, 2007, Countrywide told Plaintiffs they needed to make a lump sum payment of $6,964.19 in order to get a loan modification. Id. ¶ 30. Countrywide told them in January 2008 that they needed to make monthly payments of $2,500 for six months in order to get caught up. Id. ¶ 33. Plaintiffs thought this would cover both loans but learned several payments in that it was only for the first. Id. ¶ 34. The loans were transferred around this point to BAC. Id. ¶ 42. BAC told Plaintiffs they would modify the loan if Plaintiffs moved back into the Property. Id. ¶ 44. (They had moved to Massachusetts in an effort to improve their financial condition.) The modification was approved on August 27, 2009. Id. ¶ 45. Plaintiffs began making monthly payments of $1,033.33 even though it was not the figure previously represented. Id. ¶¶ 49-50. In April 2010, BAC failed to debit Plaintiffs' checking account, causing Plaintiffs to default on the trial modification plan. Id. ¶¶ 54-55. BAC informed Plaintiffs in December, 2010 that one of their loans was in foreclosure and that they needed to pay $60,179.45 to reinstate one of the loans. Id. ¶ 62.

That lawsuit ended in a dismissal with prejudice ordered by this Court on June 19, 2013. Dkt. No. 8-7. Defendant asserts

that the parties (BAC and the Benjamins) had settled their dispute ("the Settlement Agreement"), and that BAC thereby paid Plaintiffs $60,000. Dkt. No. 8-1 ¶ 4.

## II. The Second lawsuit

Plaintiffs filed suit against Shellpoint on January 21, 2016, in the State Court of Glynn County, alleging claims of breach of contract, grief, fraud, and misrepresentation, all of which were based on the theory that Shellpoint, as Bank of America's successor, breached the Settlement Agreement from the first lawsuit by attempting to collect on the note or by moving forward with foreclosure. Dkt. No. 8-6; Dkt. No. 8-8. At the hearing on Shellpoint's motion for summary judgment, the Benjamins argued that their settlement was with the Bank and that Shellpoint therefore had no standing to enforce it. Id., p. 7. The state court rejected those arguments and granted summary judgment in favor of Shellpoint on May 17, 2017. Id.

## III. The Present Lawsuit

Pro se Plaintiffs filed the present lawsuit on July 7, 2017. Dkt. No. 1. They named the Bank, Shellpoint, and Aldridge Pite, LLP ("AP")[1] as Defendants. Id. The Complaint lists claims of breach of contract, fraud, and fraudulent loan relating to a "mortgage dispute." Id. III.A. It asserts that the events giving rise to the claim began in 2006 and does not

---

[1] The Court has previously ordered dismissal of claims against AP. Dkt. No. 18.

state an end date. Id. III.B. In describing the relevant facts, the Complaint alleges that Plaintiffs moved to Massachusetts to save their house, and moved back into their Georgia home because of the promise of a loan modification. Id. III.C. "They lied," the Complaint alleges. According to the Complaint, the Defendants began refusing Plaintiffs' payments after three payments had been made. Id. Then, "they sold the mortgage to another servicer,"[2] and after working with Plaintiffs, they sold it again. Id.

Plaintiffs also attached a letter to their Complaint. The letter explains that the house was apparently sold in February 2016, but the letter asks for proof of such a transfer and alleges that the settlement and the deed completion were done without their signature. Dkt. No. 1-1.

Defendants attached to their Motion for Summary Judgment a promissory note dated July 18, 2006, for the property at 118 Wentle Circle, Brunswick, GA 31525-9255 ("the Property") between Countrywide Home Loans, Inc. ("Countrywide") and Plaintiffs in which Plaintiffs promised to pay $202,800 with a yearly interest rate of 8.375%. Dkt. No. 8-2. The note appears to have required Plaintiffs to make monthly payments of $1,467.46 that may change as of August 2008. Id., p. 1. Defendants have also

---

[2] The Court is reasonably confident that "servicer" is the handwritten word Plaintiffs inscribed.

produced a security deed on the Property, which names Countrywide as the secured lender. Dkt. No. 8-3.

Defendants have further produced evidence that the Bank foreclosed on the Property on February 2, 2016, and that the deed signifying that event was signed on March 29, 2016. Dkt. No. 8-9.

The Bank and Shellpoint have filed a motion for summary judgment based on the preclusion of this suit by the two previous suits.

Plaintiffs have also produced a letter from Shellpoint dated February 3, 2017 ("the February 2017 letter"), stating that the owner who recently acquired the Property through foreclosure was willing to "make a one-time relocation offer to help [the Benjamins] with moving expenses if [they we]re willing to vacate the home at an agreed upon date." Dkt. No. 12-6, p. 14.

**LEGAL STANDARD**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come

AO 72A
(Rev. 8/82)

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Defendants argue that they should prevail as a matter of law. Their argument is based not on the merits of their case, not on the position that Plaintiffs cannot prove their claims, but on a more fundamental reason: Plaintiffs claims against Shellpoint and the Bank relating to the servicing of the loan on Plaintiffs' Property have already been adjudicated.

When plaintiffs bring claims against defendants arising under state law, they can choose to bring their suit in a state court, or, in certain instances, in a federal court. The two court systems operate parallel, not under a hierarchy. That is, federal courts do not have the authority to review the final judgment of a state court. See Wilkinson v. Pitkin Cnty. Bd. of Cnty. Com'rs, 142 F.3d 1319, 1325 (10th Cir. 1998) (citing District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 484-85 (1983)).

The Court is required, if appropriate, to apply the doctrine of res judicata, or claim preclusion, whereby "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2011).

In the present case, Plaintiffs filed a lawsuit against BAC in 2011 in Glynn County Superior Court. It was settled and dismissed with prejudice in June 2013 after being removed to this Court. They filed the second lawsuit against Shellpoint in January, 2016, in the State Court of Glynn County, and they lost. Shellpoint prevailed on summary judgment on May 17, 2017. Seven weeks later, on July 7, 2017, Plaintiffs filed the present lawsuit in this Court against Shellpoint, the Bank, and AP, complaining of a dispute that began occurring in 2006.

The dates alone hint that Plaintiffs filed the present suit to re-litigate the claims they had just lost. However, the dates alone are not enough to bring the Court to such a determination. Defendants must satisfy three requirements in order for the Court to find that Plaintiffs are precluded from litigating the issues presented in this third suit. They are: (1) a previous adjudication on the merits by a court of competent jurisdiction; (2) identity of the causes of action; (3) identity of the parties or their privies. Crowe v. Elder,

723 S.E.2d 428, 430 (Ga. 2012) (citing O.C.G.A. § 9-12-40).[3]

1. *Final judgment on the merits*. The first element is easily satisfied. Regarding the first lawsuit, a dismissal with prejudice is a final decision on the merits. Fowler v. Vineyard, 405 S.E.2d 678, 681 (Ga. 1991); Kaspar Wire Works, Inc., v. Leco Engineering & Mach., Inc., 575 F.2d 530, 534 (5th Cir. 1978). Regarding the second lawsuit, a grant of summary judgment is a final judgment when it "actually adjudicated the merits." Roth v. Gulf Atlantic Media of Ga., Inc., 536 S.E.2d 577, 679 (Ga. Ct. App. 2000). Having reviewed the summary judgment order from the second suit, the Court easily finds that it adjudicated the merits. The state court found that "Shellpoint did not breach any obligation in the settlement agreement and the breach of contract claim fails" and that Plaintiffs produced no facts to support their claims for fraud, grief, or misrepresentation" after examining the elements required to prove each claim. Dkt. No. 8-6, pp. 4-5.

There is no doubt that both courts had jurisdiction to

---

[3] State law governs the preclusive effect of a state court judgment. See Allen v. McCurry, 449 U.S. 90, 96 ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.") (citing 28 U.S.C. § 1738). That is somewhat more complicated here because there are two previous final judgments, one by a federal court and one by a state court. Still, the elements of res judicata under Georgia law do not differ from those under federal law in a way that would change the result in this suit. See In re Piper Aircraft Corp., 244 F.3d at 1296 (listing the requirements as (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both suits involve the same parties or their privies; (4) the claims in the present suit were or could have been brought in the previous).

9

render the judgments. This Court had diversity jurisdiction in the first lawsuit because the action was between parties of different states and the amount in controversy exceeded $75,000. See Dkt. No. 8-5 ¶¶ 7-9; 28 U.S.C. § 1332 (granting diversity jurisdiction to federal district courts). The State Court of Glynn County had jurisdiction in the second lawsuit because the Property is located in Glynn County. See O.C.G.A. § 15-7-4 (granting jurisdiction with the territorial limits of the county for all civil actions in which exclusive jurisdiction is not vested in the superior courts). The action was not one "respecting title to land" as it involved claims of fraud, misrepresentation, and breach of contract. Ga. Const. Art. 6, § 4, ¶ I.

2. *Identity of causes of action.* The second element is also met. A "cause of action" for res judicata purposes "has been deemed to be 'the entire set of facts which give rise to an enforceable claim.'" Crowe, 723 S.E.2d at 430 (quoting Morrison v. Morrison, 663 S.E.2d 714 (Ga. 2008)). The state court in the second suit found that all of Plaintiffs' claims involved Shellpoint's breach of the settlement agreement from the first suit by attempting to collect on the note or by moving forward with foreclosure. Dkt. No. 8-6, p. 4. In defining the present cause of action, Plaintiffs' complaint lists claims of breach of contract, fraud, and fraudulent loan relating to a "mortgage

dispute." Dkt. No. III.A. This Complaint asserts that the events giving rise to the claim began occurring in 2006 and does not state an end date. Id. III.B. In describing the relevant facts, the Complaint alleges that Plaintiff moved to Massachusetts to save their house, and moved back into their Georgia home because of the promise of a loan modification. Id. III.C. "They lied," the Complaint alleges, and began refusing Plaintiffs' payments after three payments had been made. Id. Then, "they sold the mortgage to another servicer," and after working with Plaintiffs, they sold it again. Id. So far, all of these events are clearly part of the same cause of action at issue in either the first or the second lawsuit. And much of these allegations mirror those stated with more specificity in the first lawsuit's complaint. See infra pp. 3-4.

Because of Plaintiffs' pro se status, the Court has rigorously searched the docket and listened at oral argument, looking for anything Plaintiffs complain about in this lawsuit that could not have been handled by the first or second lawsuit. This Complaint does refer to Plaintiffs' Property being sold without their signature and without proof of the transfer. The Complaint alleges that this occurred in February 2016, one month after the second lawsuit was filed. The only other allegation Plaintiffs have identified in the record and pleadings that occurred after the second lawsuit was filed is a February 3,

2017 letter from Shellpoint stating that the owner who newly acquired the Property through foreclosure was willing to "make a one-time relocation offer to help [the Benjamins] with moving expenses if [they we]re willing to vacate the home at an agreed upon date."[4] Dkt. No. 12-6, p. 14.

Although the foreclosure occurred after Plaintiffs filed their complaint in the second lawsuit, it resulted from actions alleged in the complaint. It is clear that Plaintiffs filed that suit to stop the foreclosure and were unsuccessful. Regarding the February 2017 letter, the parties made clear at oral argument that the letter was related to settlement negotiations during the second lawsuit and not to any actions that Plaintiffs complain of in this suit. Therefore, the cause of action in this lawsuit is identical to the one resolved by the second lawsuit.

3. *Identity of parties or their privies.* The Benjamins, Shellpoint, and the Bank are the relevant parties in the present suit.[5] The Benjamins and Shellpoint were the two parties in the second suit. The only remaining question is whether the Bank is a privy to Shellpoint. "'There is no definition of privity which can be automatically applied to all cases involving the

---

[4] The Court is unsure whether this is relevant to any claim but is presently concerned only with whether it is part of the "cause of action" in any previous suits.
[5] AP has been dismissed from this action and is not considered in this analysis.

doctrines of res judicata [], since privity depends upon the circumstances. Privity may be . . . established if the party to the first suit represented the interests of the party to the second suit.'" ALR Oglethorpe, LLC v. Henderson, 783 S.E.2d 187, 192 (Ga. Ct. App. 2016) (quoting Brown & Williamson Tobacco Corp. v. Gault, 627 S.E.2d 549 (Ga. 2006)).

The Court finds that the Bank is in privity to Shellpoint for the purpose of the preclusive effect of the second lawsuit. Plaintiffs sued Shellpoint in the second suit based on their relationship as the loan servicer. That appears to be exactly the reason that Plaintiffs named the Bank in this case. Both parties' liability to Plaintiffs would arise based on the terms of the loan servicing agreements. Shellpoint serviced the loan; the Bank acquired the Property after Shellpoint took steps to collect on the note.

## CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. No. 8) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and **CLOSE** the case.

**SO ORDERED**, this 6th day of August, 2018.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA